IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

```
WAYNE ALAN UNDERWOOD,          )
                               )
          Plaintiff,           )
                               )
v.                             )    Case No. CIV-14-227-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Wayne Alan Underwood (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 15, 1952 and was 60 years old at the time of the ALJ's decision. Claimant obtained an associate's degree. Claimant has worked in the past as an operations manager in a trucking company, a shipping and receiving clerk, and inventory clerk. Claimant alleges an inability to work beginning September 9, 2009 due to limitations resulting from foot problems, back pain, and hypertension.

**Procedural History**

On February 22, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 24, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Bernard Porter. On November 5, 2012, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on April 7, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work. He also found Claimant could perform a range of light work with limitations.

**Error Alleged for Review**

Although Claimant fails to enumerate or clearly delineate the issues of error in his briefing for this review, this Court ascertains that Claimant asserts the ALJ committed error in (1)

failing to consider all of his limitations at step two; and (2) properly assessing Claimant's RFC.

**Step Two Evaluation**

In his decision, the ALJ determined Claimant suffered from the severe impairments of gout, heel spurs, olecranon bursitis, lumbar disease, and hypertension. (Tr. 10). The ALJ also found Claimant retained the RFC to perform a range of light work. In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently, could sit for 6 hours in an 8 hour workday, and could stand and walk for 6 hours in an 8 hour workday. Claimant could occasionally use foot controls. The ALJ, however, found Claimant must never crawl or climb ladders or scaffolds and must have not exposure to temperature extremes. (Tr. 11). After consultation with a vocational expert, the ALJ found Claimant could perform his past relevant work as an operations manager, which the expert and the ALJ concluded represented skilled, light work. The vocational expert also identified the representative jobs of customer service representative, and inventory and shipping and receiving clerk as jobs Claimant was capable of performing and which existed in sufficient numbers in the national and regional economies. (Tr. 17). Based upon these findings, the ALJ concluded Claimant was not disabled to warrant the award of benefits. (Tr.

5

17-18).

Claimant contends the ALJ failed to include his hearing difficulties as a severe impairment at step two. Because the ALJ did find that Claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating Claimant's RFC at subsequent steps in the sequential evaluation. See, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting Langley v. Barnhart, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also Hill v. Astrue, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in

itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted].

The ALJ considered the restriction established by Dr. Richard Hastings, II that Claimant be limited in his exposure to loud industrial noises. (Tr. 15). However, he gave Dr. Hastings' opinion "little weight" as it was inconsistent with the majority of the medical evidence. Id. Moreover, Claimant never asserted a hearing limitation in the application process, noting that he did not need a hearing aid and he followed spoken instructions "fine." (Tr. 162-63). Dr. Michael Stone specifically found Claimant's "[c]onversational tone is normal, and no hearing defects are appreciated." (Tr. 237). No other restrictions or treatment resulted from Claimant's alleged hearing difficulties. This Court finds no error in the ALJ's omission of a hearing restriction in his RFC assessment or in the failure to identify the condition as a severe impairment.

**RFC Assessment**

Claimant contends the RFC which the ALJ established does not

accurately reflect his limitations. Claimant testified he quit working because he was laid off. (Tr. 30). Although he references that he used crutches at work and intimates that this contributed to his termination, he states that he was laid off with three other people. Id. While working, he walked five or six hours in an 8 hour workday. (Tr. 31). He also stated that he stood for four or five hours per day. (Tr. 32). Claimant's gout causes pain in his feet, worsened by staying on his feet. (Tr. 35). Claimant takes Advil for the pain. Id. He estimated he could sit for 45 minutes to an hour at a time, stand for not more than a half hour, and walk for fifteen to twenty minutes at a time. He also stated he could lift 15 or 20 pounds. (Tr. 37-38).

The ALJ noted Claimant took care of a dog and two horses, performs light housecleaning, does dishes, does laundry, makes the bed, cooks a little bit, and vacuums for short periods. (Tr. 16). Claimant testified that he was laid off from his job and looked for other employment but no one was hiring. Id.

Additionally, the medical record indicates Claimant responded to treatment. On July 17, 2009, Claimant was attended by Dr. Kenneth P. Seiter, Jr. Dr. Seiter found Claimant had been taking colchicine and noted a significant reduction in pain and discomfort about the left first metatarsal phalangeal joint. He continued

with moderate pain in this area.  Claimant also noted improved range of motion in joint.  He reported that he was overall improved but not completely resolved at that time.  Dr. Seiter also noted improved range of motion in dorsiflexion and pantar flexion but he had significant tenderness overlying the area.  (Tr. 217).  While Dr. Seiter found a continued acute gouty flare up about the first metatarsal phalangeal joint, he also found a "noticeable resolution" following the use of medication.  (Tr. 218).

On July 27, 2009, Claimant reported "doing well."  He had a significant reduction in pain and discomfort about the left first metatarsal phalangeal joint.  He had a resolution of edema and erythema.  Claimant stated that he was able to ambulate with minimal to no pain.  He stated he had increased range of motion.  Over the counter inserts had significantly improved his discomfort to the left heel overlying the Haglund's deformity.  Claimant reported minimal to no tenderness overlying the left first metatarsal phalangeal joint.  (Tr. 219).

On June 7, 2011, Dr. Michael Stone performed a consultative examination on Claimant.  He noted Claimant's gait was stable with slowed speed and normal stability.  He noted no limp but Claimant was shuffling both feet.  He did not require the use of an assistive device to ambulate.  (Tr. 237).  Claimant's toe walking

9

was noted as weak. (Tr. 241).

On July 14, 2011, Dr. Kenneth Wainner completed a physical RFC assessment form on Claimant. He concluded Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 244).

On July 12, 2012, Dr. Hastings completed a similar form. He determined Claimant could occasionally lift/carry 10 pounds, frequently lift/carry less than 10 pounds as he "can't do repetitive activity", stand/walk for less than 2 hours in an 8 hour workday, sit for less than 6 hours in an 8 hour workday, and experienced "moderate" limitation in both upper and lower extremity pushing and pulling. (Tr. 279). He also found Claimant could only occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds, occasionally balance and stoop, and never kneel, crouch, or crawl. (Tr. 280). Claimant was limited in reaching in all directions. (Tr. 281). As previously noted, Dr. Hastings found Claimant was limited in his hearing. He also found Claimant should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and fumes, odors, dusts, gases, poor ventilation. He should also avoid moderate exposure to noise and

avoid all exposure to hazards.  (Tr. 282).

The ALJ rejected Dr. Hastings' opinion as well as the limiting nature of Claimant's testimony based upon his activities of daily living, his continued search for employment, the fact his gout is well-controlled with medication, and the presence of significant gaps in Claimant's medical treatment.  (Tr. 16).

"RFC is what an individual can still do despite his or her limitations," and it constitutes "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . . may cause . . . limitations or restrictions that may affect his or her capacity to do work-related . . . activities." Soc. Sec. R. 96-8p.  To determine a claimant's RFC, the ALJ must therefore assess the claimant's ability to perform the "physical demands of work activity, such as sitting, standing, walking, [and] lifting." 20 C.F.R. §§404.1545(b), 416.945(b).  Further, the ALJ must assess "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and this requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform." Soc. Sec. R. 96-8p. In addition, "[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history,

medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, effects of symptoms, and evidence from attempts to work. Id. Finally, the ALJ "must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Id.

The ALJ fulfilled his duty to examine the medical record, inconsistencies in Claimant's subjective testimony, and reject medical evaluations which were inconsistent with the objective record. This Court finds no error in the ALJ's assessment and conclusions that Claimant was able to perform his past relevant work and light work in general with restrictions accommodating his limitations. The ALJ performed the appropriate analysis at step four under Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). He also reached a conclusion at step five that Claimant could perform the representative jobs identified which was supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security

Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 20th day of July, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE